**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE AT KNOXVILLE**

| | | |
|---|---|---|
| EVETTE D. NORTHERN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. ________________ |
| | ) | (Jury Demanded) |
| CHASE SCIENTIFIC GLASS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff, Evette D. Northern ("Northern"), by and through the undersigned counsel, brings the instant cause of action against Chase Scientific Glass, Inc. ("Chase"), to remedy actions of employment retaliation committed by Chase in violation of Title VII of the Civil Rights Act ("Title VII"), the Tennessee Human Rights Act ("THRA"), and the Tennessee Public Protection Act ("TPPA"). Northern further brings common law causes of action related to Chase's commission of the torts of common law retaliatory discharge and outrageous conduct.

***Jurisdiction and Venue***

1. This Court has subject matter jurisdiction over the claims raised herein pursuant to 28 U.S.C. § 1331. The Court further has diversity jurisdiction over the claims raised herein pursuant to 28 U.S.C. § 1332 as this matter is between citizens of different states and involves an amount in controversy in excess of $75,000.00. The Court further possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this district in accordance with 28 U.S.C. § 1391, as the totality of the events and/or omissions alleged herein occurred in the Eastern District of Tennessee.

***Parties***

3. Northern is a citizen and resident of Rockwood, Roane County, Tennessee.

4. Chase is a foreign corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business at 411 East Wisconsin Avenue, Milwaukee, Wisconsin 53202. Chase may be served with process through its registered agent, CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, Tennessee 37929.

***Facts***

5. At all times material to this controversy, Chase has regularly and continuously engaged in business in the State of Tennessee and accordingly is subject to the jurisdiction of this Court and the laws of Tennessee.

6. On or about February 10, 2005, Northern was hired by Chase to perform the duties of a Human Resource Generalist at the Chase plant in Rockwood, Tennessee.

7. Northern satisfactorily performed the duties assigned to her and advanced rapidly at Chase. In less than three (3) months after beginning employment at Chase, in or about May 2005, Northern was promoted to the position of Human Resources Supervisor at the Rockwood plant to aid in the handling of employee relations at that location. Upon her promotion, Northern received an accompanying $3,000.00 pay raise.

8. Northern continued to serve in the capacity of human resources supervisor for the duration of her employment at Chase and at all times satisfactorily performed her job. In or

about July 2005, Bob Brooks ("Brooks") was hired as Director of Chase's Human Resources Department and Northern reported to Brooks as her supervisor.

9. On or about February 22, 2006, Northern received an e-mail from David Bell ("Bell"), maintenance manager at Chase, inquiring whether an absence "call in" had been received from Paul Underwood ("Underwood"), a lead maintenance technician.

10. Subsequently, Northern contacted Underwood regarding his attendance, at which time Underwood asked if he could meet with either Northern or Brooks "in person" regarding certain job-related issues. Ultimately, Northern responded to Underwood's request in the affirmative.

11. Shortly thereafter, on February 23, 2006, Underwood met with Northern. Brooks was out of town and unable to attend. Underwood told Northern that he had information he "could not stand the pressure of knowing" without telling someone. Northern memorialized the subject(s) discussed in the meeting in her own handwritten notes in order to accurately report the matters to appropriate management personnel.

12. Specifically, Underwood reported that Bell had made harassing sexual comments to himself and other members of the maintenance department supervised by Bell. Underwood reported Bell to make lewd statements while holding his crotch area in addition to other harassing, suggestive and/or inappropriate remarks regarding sexual acts.

13. Underwood also indicated at the February 23, 2006 meeting that both he and others had been instructed to, and ultimately did, dump oil and/or hydrochloric acid into the Rockwood City drains; and that he also acted as a lookout or "watchdog" to ensure that they were not being watched while engaged in the dumping activity. Underwood related that he and the

other employees involved had been threatened by their supervision with being "fired" if they made any statements and/or told anyone outside of those involved regarding the illegal dumping. Underwood expressed his belief that the improper dumping had been ongoing for a significant period of time - - at least since 2003 when he was hired by Chase.

14. Underwood's assertions were not the first such "dumping" issues that came to Northern's attention. Northern had been made aware of previous visits to the Chase site by personnel with the Roane County waste water treatment facility regarding complaints of Chase's on-site activities and the effects of same on the water treatment facility. Northern was also aware that the water treatment facility had threatened to contact the Environmental Protection Agency regarding those possible violations if Chase continued its dumping practices.

15. In the February 23, 2006 meeting with Northern, Underwood also reported disparate pay practices within the maintenance department concerning preferences in the administration of pay raises experienced by himself and another employee. Underwood further indicated that he felt that Bell made disparate pay decisions against him because Underwood and the other employee had expressed offense to Bell about his offensive and sexually charged language.

16. The information provided by Underwood to Northern referenced above was promptly reported to her supervisor. The next day, Northern sat in on a meeting between Brooks and Underwood regarding the matter, wherein Underwood reaffirmed his assertions regarding Bell's inappropriate remarks, pay discrimination, and the illegal dumping of chemicals into the public drains. After Underwood left the meeting, she also reported to Brooks the information she knew about the Roane County complaints about Chase's activities and that the same might

be legitimate based upon Underwood's statements. Northern further stated to Brooks that if these things were true, then some heads would roll.

17. Subsequent to the February 24, 2006 meeting, Northern investigated the pay discrimination allegations and found such claims meritorious. Northern brought her findings to Brooks and offered to pursue a deeper investigation into the other claims of illegal conduct alleged by Underwood. Brooks did not ask for further investigation.

18. Instead, Brooks requested Northern to turn over to him all handwritten notes she had memorializing the illegal dumping and any other information gathered during her two meetings with Underwood.

19. Pursuant to Brook's request and subsequent to memorializing her notes in electronic form, Northern, on February 27, 2006, gave both her handwritten and electronic notes from her original meeting with Underwood to Brooks. She also provided Brooks with the data obtained by her relating to the claims of pay discrimination. She also asked Brooks whether he had talked to the General Manager of Chase about the matter and Brooks responded in the negative, indicating that he was not sure how he was going to handle the matter. After securing her notes, Brooks requested via e-mail that Northern meet with him the next day, February 28, 2006, to address "unresolved human resource issues."

20. At the February 28, 2006 meeting, Brooks pushed a folder across the table toward Northern, and advised her that employment was being terminated effective immediately. Ms. Sandy Grossett, Director of Continuous Improvement, also was present at the meeting.

21. Essentially, in less than one (1) week, Northern went from a supervisory position with no disciplinary complaints to termination without warning on February 28, 2006.

22. On May 26, 2006, Northern filed a charge of discrimination with the EEOC alleging retaliation as a result of her participation in the investigation of Underwood's claims. Northern will amend this Complaint to assert the issuance of a right to sue upon receipt of same. (A copy of Northern's Charge of Discrimination is attached hereto as ***Exhibit A***).

***Count I***
***Violation of Title VII***

23. Northern hereby realleges and incorporates Paragraphs 1-22 into this Count as if set forth fully herein.

24. Chase discriminated against Northern in violation of Title VII of the Civil Rights Act. Chase acted maliciously, willfully, and with reckless indifference to Northern's rights under the law. Chase retaliated and terminated Northern from her employment at Chase as a result of Northern's participation in protected activity under Title VII, including bringing forth and investigating statements of conduct of prohibited by Title VII proffered by Underwood and described herein. Chase's termination of and retaliation against Northern is unlawful and violates Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

***Count II***
***Violation of the THRA***

25. Northern hereby realleges and incorporates Paragraphs 1-24 into this Count as if set forth fully herein.

26. Chase acted maliciously and with reckless indifference to Northern's rights under the law. Chase retaliated and terminated Northern from her employment at Chase as a result of Northern's participation in bringing forth and investigating statements of conduct prohibited by

the THRA and proffered by Underwood and described herein. Such retaliation is unlawful and violates T.C.A. § 4-21-101, *et seq*., the Tennessee Human Rights Act.

***Count III***
***Violation of the TPPA***

27. Northern hereby realleges and incorporates paragraphs 1-26 into this Count as if set forth fully herein.

28. Chase acted maliciously and with reckless indifference to Northern's rights under the law. Chase retaliated against Northern as a result of her participation in the reporting of employee Underwood's statements of illegal conduct on the part of Chase and Northern's refusal to remain silent about the same. As a result of Northern's participation in investigating and reporting Underwood's statements of illegal conduct, Chase terminated Northern's employment. As a result, Chase has violated T.C.A. § 50-1-304, the Tennessee Public Protection Act.

***Count IV***
***Common Law Retaliatory Discharge***

29. Northern hereby realleges and incorporates paragraphs 1-28 into this Count as if set forth fully herein.

30. Chase acted maliciously and with reckless indifference to Northern's rights under the law. As a result of her participation in and refusal to remain silent about conduct brought to her attention by employee Underwood alleging multiple violations by Chase that contravene established and well-defined state and federal policy, Chase discriminated, retaliated, and ultimately discharged Northern.

31. Northern's participation in and refusal to remain silent about the

conduct voiced by Underwood caused Northern to be unjustly and unlawfully terminated by Chase.

***Count V***
***Outrageous Conduct***

32. Northern hereby realleges and incorporates paragraphs 1-31 into this Count as if set forth fully herein.

33. Chase acted maliciously, intentionally, and with reckless indifference to Northern's rights under the law so as to be intolerably outrageous. Chase knew that the discharging Northern from her position would cause Northern severe financial and emotional distress. Furthermore, Chase knew that the termination of Northern from her position would be a public embarrassment and cause damage to the Plaintiff's reputation.

34. As a direct and proximate result of Chase's actions Northern has suffered lost wages, lost benefits, humiliation, embarrassment as well as emotional distress and other damages.

35. Chase's actions were willful, intentional, reckless, and/or malicious sufficient to justify the imposition of punitive damages.

WHEREFORE, Northern prays as follows:

A. That she be awarded back pay, compensation for lost benefits, as well as front pay in such amounts as she may demonstrate herself to be entitled in accordance with Title VII, the THRA, the TPPA as well as the common law;

B. That she be awarded compensatory and consequential damages, inclusive of damages for humiliation, embarrassment, and emotional distress in excess of $750,000.00.

C. That she be awarded punitive damages in excess of $750,000.00.

D. That she be awarded her attorney's fees in connection with this matter pursuant to Title VII of the Civil Rights Act; the Tennessee Human Rights Act; the Tennessee Public Protection Act; as well as in accordance with law;

E. That a jury be impaneled to determine all issues in this cause; and

F. She be awarded any such other and further relief to which she may be entitled, including all costs related to this cause.

Respectfully submitted this 19 day of June, 2006.

ARNETT, DRAPER AND HAGOOD

By [signature]
Jay W. Mader, BPR #016199
Attorneys for Plaintiff

ARNETT, DRAPER & HAGOOD
2300 First Tennessee Plaza
Knoxville, Tennessee 37929
(865) 546-7000 - phone
(865) 546-7000 - fax

## VERIFICATION

Evette D. Northern, having been duly sworn according to law, makes oath that she has read the foregoing Complaint and that the facts set forth therein are true to the best of her knowledge, information and belief.

EVETTE D. NORTHERN

Sworn to and subscribed before me this 16th day of June 2006.

Notary Public

My commission expires: 11/3/07

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974: See Privacy Act Statement before completing this form. | AGENCY<br>☐ FEPA<br>☒ EEOC | CHARGE NUMBER<br>494-2006-01244 |
|---|---|---|

TENNESSEE HUMAN RIGHTS COMMISSION and EEOC

SSN: **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** RACE: **Caucasian**

| NAME: (Indicate Mr., Ms., Mrs.)<br>**Mrs. Evette D. Northern** | Home Telephone: (Include Area Code)<br>**865-354-6099** |
|---|---|
| STREET ADDRESS:<br>**408 South Chamberlain Avenue, Rockwood, TN 37854** | DATE OF BIRTH:<br>**08-16-1967** |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME. (If more than one list below.)

| NAME: **Chase Scientific Glass, Inc.** | NUMBER OF EMPLOYEES, MEMBERS: **Over 15** | TELEPHONE (Area Code)<br>**(865) 354-1212** |
|---|---|---|
| STREET ADDRESS:<br>**411 East Wisconsin Avenue, Milwaukee, WI 53202** | | COUNTY:<br>**Milwaukee** |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE OF DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN | EARLIEST **02-2006** LATEST **02-28-06** |
| ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER ____________ | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

**Please see Affidavit of Evette D. Northern attached hereto as *Exhibit A* and incorporated herein by reference.**

| ☒ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBE AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)<br>NOTARY – (When necessary for State and Local Requirements)<br><br>My commission expires: |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>5/25/06 Evette D. Northern<br>Date Charging Party (Signature) | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br><br>Evette D. Northern<br>SIGNATURE OF COMPLAINANT |

RECEIVED MAY 26 2006 EQUAL EMPLOYMENT OPPORTUNITY ... NASHVILLE

EXHIBIT A Compl. of E. Northern

EEOC FORM 5 (Rev. 06/92)

## CHARGE OF DISCRIMINATION

## AFFIDAVIT OF EVETTE D. NORTHERN

STATE OF TENNESSEE )
)
COUNTY OF KNOX )

1. My name is Evette D. Northern. I am over eighteen (18) years of age and have personal knowledge of each of the statements contained herein, and I am otherwise competent to render the instant testimony.

2. I began working for Chase Scientific Glass, Inc. ("Chase") in February 2005 as a human resource generalist at the Chase facility located in Rockwood, Roane County, Tennessee. Throughout my employment at Chase, I received no formal complaints, warnings, or other advisement of any substandard performance of my duties at Chase, and, in May 2005, I received a promotion to human resources supervisor.

3. In or about July 2005, Bob Brooks ("Brooks"), was hired as the human resources director at the Chase facility, and I reported to him as my supervisor.

4. In February 2006, I contacted an employee in the Chase maintenance department by the name of Paul Underwood ("Underwood") regarding attendance related issues. Thereafter, a meeting was held between myself and Underwood regarding those issues. Prior to the conclusion of the aforementioned meeting, Underwood indicated that he wished to discuss further issues with myself and Brooks. I advised that Brooks was unavailable due to being out of town on business, but Underwood also indicated that he wanted to talk with me at that time because "he could not stand the pressure of knowing what he knows."

5. Upon meeting with Underwood, he leveled allegations of sexual harassment experienced by himself and others in the maintenance department at Chase by his supervisor, David Bell ("Bell").

6. Underwood additionally reported the illegal dumping of chemicals including acids and petroleum products into the public sewers at Chase, an activity in which both he and other employees were forced to participate.

7. Underwood reported disparate pay practices within Chase and specifically within the maintenance department concerning preferences in the administration of pay raises and the timing of same experienced by himself and another employee. Underwood further indicated that he felt that Bell made disparate pay decisions against him because Underwood had expressed offense to Bell about his offensive and sexually charged language.

8. So as to fully and accurately represent the illegal conduct reported by Underwood, I memorialized his assertions and the discussions related thereto in my handwritten notes taken at the time of the meeting.

9. I immediately brought these allegations of illegal conduct to the attention of Brooks as part of a prompt and thorough investigation of Underwood's allegations of illegal conduct.

10. Subsequently, I attended a meeting with Brooks and Underwood wherein Underwood reiterated his allegations. I once again asserted that the allegations should be investigated at that time.

11. Thereafter, Brooks requested, and took possession of, my handwritten notes that I had made documenting the meetings with Underwood and my investigation of the pay disparities. I further typed the contends of my handwritten notes and e-mailed them to Brooks.

12. The next day, I was once again was requested to meet with Brooks for what was described by Brooks as "not a typical meeting" and that same pertained to "unresolved human resources issues." At the time of the meeting, Brooks advised, without warning, that my employment with Chase was being terminated effective immediately for alleged departmental restructuring and claims that I lacked skills needed in employee relations. However, upon information and belief, active interviewing was/is taking place for positions in human resources.

13. I believe that my termination by Chase was pretextual in nature and that the true reason(s) for my termination were a result of my participation and investigation of the illegal actions set forth above.

14. Based upon my participation and investigation into the activities and allegations surrounding the aforementioned sexual harassment claims, dumping claims, as well as disparate pay claims, I was retaliated against and wrongfully discharged from employment at Chase in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.,* as well as the Tennessee Human Rights Act, § 4-21-301 *et seq.*

AND FURTHER THE AFFIANT SAYETH NOT.

[signature]
EVETTE D. NORTHERN

## ACKNOWLEDGMENT

STATE OF TENNESSEE )
) ss:
COUNTY OF KNOX )

Personally appeared before me, the undersigned authority, a Notary Public in and for the State and County aforesaid, EVETTE D. NORTHERN, to me known, who, after being duly sworn, made oath that the foregoing statements are true of her own personal knowledge and that she executed the above Affidavit by signing her name thereto in my presence.

Sworn to and subscribed before me this 25th day of May, 2006.

Lisa L. Henderson
NOTARY PUBLIC

My Commission Expires: 11-01-06

LISA L. HENDERSON STATE OF TENNESSEE NOTARY PUBLIC KNOX COUNTY

Case 3:06-cv-00233 Document 1 Filed 06/19/06 Page 15 of 15 PageID #: <pageID>