# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| EVETTE D. NORTHERN, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:06-cv-233 |
| | ) (Phillips/Guyton) |
| CHASE SCIENTIFIC GLASS, INC. | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Evette D. Northern brings this action for retaliatory discharge under Title VII, the Tennessee Human Rights Act, and the Tennessee Public Protection Act, and further alleges retaliatory discharge and outrageous conduct under the Tennessee common law. Defendant Chase Scientific Glass, Inc. has moved for summary judgment on all five of plaintiff's causes of action [Doc. 20]. Plaintiff responded in opposition [Doc. 28], and defendant replied [Doc. 35]. After reviewing the extensive briefs and evidence submitted in support thereof, the court has determined that oral argument will not be necessary. The plaintiff's request for oral argument is therefore denied.

For the reasons that follow, defendant's motion will be **GRANTED in part** and **DENIED in part**.

### I. BACKGROUND

The facts as follows are construed in the light most favorable to the nonmoving party, the

1

plaintiff.

Defendant Chase Scientific Glass, Inc. ("Chase") is a manufacturer of laboratory and scientific glass products located in Rockwood, Tennessee. During the relevant time period, Chase was a wholly owned subsidiary of Fisher Scientific International, Inc., and part of the Fisher Scientific Products division. On February 15, 2005, plaintiff Evette Northern was hired by Chase as a Human Resources ("HR") Generalist by then-HR Director Vicki Bryant. As an HR Generalist, plaintiff Northern was responsible for human resources functions at the Chase plant in Rockwood, Tennessee, as well as various other locations in the United States.

When Vicki Bryant's employment was terminated, plaintiff assumed additional responsibilities and was promoted to HR Supervisor on May 26, 2005. In July 2005, Robert Brooks was hired as the new director of HR for Chase. At that time, two HR Supervisors reported to Mr. Brooks, plaintiff and Sandy Roy.

In October 2005, Mr. Brooks streamlined the HR department, assigning plaintiff as the HR Supervisor for Employee Relations and Ms. Roy as the HR Supervisor for Compensation & Benefits. Mr. Brooks created a "task list" for each member of the HR department to complete for the remainder of 2005. Plaintiff's job duties included hiring, recruiting, interviewing, orientation, counseling, disciplinary actions, investigations, and terminations for the Chase facilities in Tennessee and Oklahoma.

Between October 2005 and February 2006, Mr. Brooks met with plaintiff on at least three occasions. Defendant alleges that these meetings were to review with plaintiff her performance and to discuss what had and had not been accomplished. Although plaintiff acknowledges the meetings, she disputes that she was made aware that she was not fulfilling her assigned tasks. Defendant

2

alleges that based on these meetings, Mr. Brooks assessed the need for a strong Employee Relations Manager and created a job description to that end. Defendant alleges that Mr. Brooks determined that plaintiff, who holds an Associates of Applied Science, Contemporaneous Business Management Degree from Roane State, did not possess the requisite education, skills, or experience to perform this position. Plaintiff, however, notes that there is no documentation of any problems with her performance and that Brooks at all times found her performance satisfactory and complete.

In late 2005, Mr. Brooks placed the Employee Relations Manager job description in various publications and provided the same to a recruiter. In January 2006, Mr. Brooks drafted the "Chase Group HR Re-alignment Recommendation" ("Recommendation"), wherein he advised his superiors of his observations over the first six months of his employment and, in particular, his recommendation that a strong Employee Relations Manager be hired. In the Recommendation, Mr. Brooks noted that plaintiff, though she was the Employee Relations Supervisor at the time, did not have the requisite skills, education, or background to fulfill this new role of Manager. Throughout January 2006, Mr. Brooks forwarded copies of the Recommendation to his superiors, including the new Vice President of HR for Fisher Scientific Products Division, Patrick Brown, all of whom agreed with the substance of the Recommendation. Mr. Brooks therefore began to search confidentially for a qualified candidate for the position.

On February 22 and 23, 2006, Messrs. Brooks and Brown attended an internal HR conference in Southfield, Michigan. Defendant contends, and plaintiff disputes, that at this time Mr. Brooks and Mr. Brown decided to "move forward with respect to plaintiff's termination." Meanwhile at the Chase facility, plaintiff was advised that an employee, Paul Underwood, had violated Chase's attendance policy. Because of his poor attendance record, plaintiff issued Mr.

Underwood a final written warning and contacted him to discuss his violation. Mr. Underwood, however, requested to meet with plaintiff in person. On February 23, 2006, plaintiff met with Mr. Underwood, who voiced various concerns related to his employment and the well-being of the local community, including alleged pay discrepancies, monetary kickbacks, sexual harassment by his superiors, and illegal dumping.

After her meeting, plaintiff called Mr. Brooks and advised him of the allegations raised by Mr. Underwood. Upon Mr. Brooks's return to Tennessee on February 24, 2006, both Mr. Brooks and plaintiff met with Mr. Underwood to discuss the concerns raised. Following the meeting, Mr. Brooks asked plaintiff to follow-up solely with regard to the potential wage disparity claimed by Mr. Underwood. Plaintiff also reported personal knowledge of dumping activities at Chase to Mr. Brooks and alerted Mr. Brooks that if the allegations were true, "heads would roll." In fact, Ms. Northern's investigation of the pay discrimination claims by Mr. Underwood did reveal disparities.[1]

On February 28, 2006, Mr. Brooks met with plaintiff to advise her that her employment with Chase was being terminated. Plaintiff maintains that she was never given a reason for her termination and was informed that there were no problems with her performance. Defendant, however, maintains that plaintiff was advised that her employment was terminated due to planned restructuring as outlined in the Recommendation, not poor performance.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission against Chase, alleging retaliation. On August 11, 2006, plaintiff received a notice of right to sue and timely filed the instant case. Plaintiff alleges that Chase terminated her employment in retaliation for her refusal to remain silent and participation in relaying the information conveyed

---

[1] To date, Mr. Underwood has not filed a Charge of Discrimination or any other complaint with any state or federal agency.

4

to her by Mr. Underwood, in violation of Title VII, the Tennessee Human Rights Act, the Tennessee Public Protection Act, and the Tennessee common law. Plaintiff further seeks recovery for the tort of outrageous conduct, alleging that Chase acted maliciously, intentionally, and with reckless indifference so as to be intolerably outrageous.

Defendant Chase has moved for summary judgment with regard to all of plaintiff's claims, arguing that the absence of genuine issues of material fact entitle Chase to judgment as a matter of law. Specifically, Chase asserts that plaintiff did not engage in any protected activity and that Chase decided to terminate plaintiff prior to her engagement in the alleged protected activity. Finally, Chase asserts that there is insufficient evidence to support a claim of outrageous conduct.

## II. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). The court must construe the facts and draw all inferences therefrom in the light most favorable to the party opposing the motion—in this case, the plaintiff. *Matsushita Elec. Indus. Co. v. Zendith Radio Corp.*, 475 U.S. 574, 587 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The sufficiency of the evidence at summary judgment is guided by the "substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252. Because the instant case is governed by the preponderance of the evidence standard, this court must ask itself "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.* at 252.

This does not mean that the evidence must dictate a verdict for plaintiff; rather, a genuine issue of material fact exists if there is sufficient evidence, beyond a "mere scintilla," that a jury *could* return a verdict for plaintiff. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. With regard to issues where the moving party will not bear the ultimate burden of proof at trial, "the burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party to demonstrate the existence of genuine issues of material fact. *Id.* at 324. The nonmoving party demonstrates the existence of genuine issues of material fact by "going beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file ....' " *Id.* If the nonmoving party fails to meet this burden, the moving party is entitled to summary judgment.

### III. ANALYSIS

#### A. Title VII and the THRA

Northern alleges that Chase engaged in retaliation prohibited under Title VII of the Civil Rights Act of 1964, 21 U.S.C. § 2000e to -17 (2006), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 to -1004 ("THRA"). Because the THRA "provide[s] for execution within Tennessee of the policies embodied in the federal civil rights statutes ... an analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act." *Lynch v. City of Jellico*, 205 S.W.3d 384, 399 (Tenn. 2006) (citations omitted).

The anti-retaliation provision of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of its employees ... because he has opposed any practice made an unlawful employment practice by this title [the "opposition clause"], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title [the "participation clause"].

42 U.S.C. § 2000e-3(a) (2006). Therefore, to state a prima facie case under Title VII and the THRA, plaintiff must demonstrate that 1) she engaged in protected activity, 2) Chase knew of this exercise of her protected rights, 3) Chase thereafter took adverse employment action, and 4) there was a causal connection between the protected activity and the adverse employment action. *E.g.*, *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007); *Balmer v. HCA, Inc.*, 423 F.3d 606, 613-14 (6th Cir. 2005); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). The plaintiff "need not prove his prima facie case by a preponderance of the evidence at this stage. Indeed, the burden of establishing the prima facie retaliation case is easily met." *Singfield*, 389 F.3d at 563 (citation omitted); *see also, e.g.*, *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000); *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) ("[A]t the *prima facie* stage the burden is minimal .... The amount of evidence in the *prima facie* context is not the same amount necessary to win a judgment.... All that is required of plaintiff at the *prima facie* stage is to demonstrate that he has a case, that the evidence is on his side.").

Once the plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the action. *Singfield*, 389 F.3d at 563. "To satisfy this burden, [defendant] 'need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.'" *Id.* (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 257

7

(1981)). Upon such a showing, the burden shifts back to the plaintiff to establish that the defendant's proffered reason is mere pretext. *Id.* Plaintiff does so by establishing that the proffered reason 1) has no basis in fact, 2) did not actually motivate the challenged conduct, or 3) is insufficient to explain the challenged conduct. *Id.* at 564.

In the instant matter, it is uncontested that Chase took "adverse" employment action when it terminated Northern. *See Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006) ("[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (other quotations omitted))). Defendant disputes, however, that plaintiff engaged in protected activity and that there was a causal connection between the alleged protected activity and Chase's decision to terminate the plaintiff.

First, defendant argues that neither the opposition clause nor the participation clause of the anti-retaliation provision of Title VII protects plaintiff's activity in this case. In support of the former proposition that plaintiff did not "oppose[] any practice made an unlawful employment practice by [Title VII]," 42 U.S.C. § 2000e-3(a), defendant cites unpublished Sixth Circuit caselaw holding that plaintiff's activity must be "active, consistent 'opposing' activities to warrant § 2000-e3(a) protection against retaliation." *Bell v. Safety Grooving & Grinding, LP*, 107 F. App'x 607, 610 (6th Cir. 2004), *quoted in Crawford v. Metro. Gov't of Nashville & Davidson County*, 211 F. App'x 373, 376 (6th Cir. 2006). This court, however, finds these cases distinguishable. In *Bell*, the Sixth Circuit held that the plaintiff did not "oppose" illegal activity on Title VII when he spoke on behalf of a member of a protected class because his "comments were more critical of [defendant]'s

8

actions as a 'labor issue' rather than as a discriminatory practice." *Bell*, 107 F. App'x at 610. The court did not elaborate on whether the alleged opposition was sufficiently "active" and "consistent," and therefore the case provides little guidance as to the precedent this court is bound to follow. *Crawford*, on the other hand, does give slightly more guidance. In *Crawford*, the Sixth Circuit noted,

> We have enumerated the types of activities that constitute opposition under Title VII: "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer ...."

*Crawford*, 211 F. App'x at 376 (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000)). Applying the *Bell* standard of "active, consistent, 'opposing' activities," the court found that because the plaintiff did not "claim to have instigated or initiated any complaint prior to her participation in the investigation, nor did she take any further action," she had not "opposed" any illegal activity within the meaning of Title VII. *Id.* Yet even under this standard, plaintiff in the instant case has established the prima facie element of protected activity under the opposition clause. Plaintiff contends that she took action outside the scope of her job duties and offered personal information while continuing to investigate the activities. Moreover, the activity which she opposed included allegations of sexual harassment and pay disparity, which are illegal under Title VII. Under the standards of summary judgment, plaintiff has established the minimal burden necessary to demonstrate the prima facie element of protected activity under the opposition clause.

Defendant alternatively disputes that plaintiff did not "participate" in a protected investigation, hearing, or proceeding under Title VII. In the Sixth Circuit, participation in an internal investigation prior to the filing of a charge with the EEOC is not protected. *Abbott v. Crown*

*Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003) ("Today we hold that Title VII protects an employee's participation in an employer's internal investigation into allegations of unlawful discrimination where that investigation occurs pursuant to a pending EEOC charge."). It is clear from the record that any investigation in the instant case was internal—indeed, plaintiff herself argues that the full investigation that ultimately took place was an internal investigation led by an employee of a Chase-affiliated entity—and at the point of her termination neither plaintiff nor Mr. Underwood had filed an EEOC charge. Indeed, Ms. Northern's EEOC charge stems from her termination for this activity, not from Mr. Underwood's allegations. Thus defendant is correct in asserting that plaintiff did not engage in activity protected by the participation clause.[2] Yet as previously discussed, it is not clear from the factual record that plaintiff's activity was not protected under the opposition clause. Plaintiff therefore has produced the requisite amount of proof to establish the protected activity element of her prima facie case.

Defendant further disputes that plaintiff's termination was causally connected to her participation in reviewing Mr. Underwood's allegations. To establish the causation prong of the prima facie case, "plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Abbott*, 348 F.3d at 543 (6th Cir. 2003); *accord McNeail-Tunstall v. Marsh USA*, 307 F. Supp. 2d 955 (W.D. Tenn. 2004). Defendant contends that its legitimate, non-discriminatory reason for the termination destroys plaintiff's ability to meet this standard and that temporal proximity alone is insufficient to prove causation. With

---

[2] Defendant alternatively argues that even had an EEOC charge been filed, plaintiff still did not "participate" because she did not step outside her normal job duties. Because Sixth Circuit precedent clearly establishes that plaintiff did not engage in activity protected by the participation clause, this court needs not address the issue.

10

regard to the former argument, defendant seemingly contends that plaintiff must conclusively prove that her engagement in protected activity was the but-for cause of her termination. However, the standard for establishing a prima facie case is merely whether there is sufficient evidence to give rise to an *inference* of causation, not whether plaintiff has *conclusively proven* her case, and plaintiff has satisfied this lesser burden.

Defendant also argues that plaintiff has failed to satisfy the prima facie element of causation because temporal proximity alone is insufficient to prove causation. While temporal proximity alone may indeed be insufficient to meet the burden of proof at *trial*, temporal proximity can give rise to an *inference* of causal causation sufficient to meet the lesser burden of establishing a prima facie case. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) ("[T]he temporal proximity of these events is significant enough to constitute sufficient evidence of a causal connection *for the purpose of satisfying Singfield's burden of demonstrating a prima facie case*." (emphasis added)). Indeed, in *Singfield*, the Sixth Circuit found that three months was sufficient to establish a prima facie case. Here, plaintiff contends that she was fired a mere four days after she engaged in protected activity.

To be sure, Sixth Circuit precedent is somewhat conflicting on this point. In *Nguyen v. City of Cleveland*, a 2000 opinion, the Sixth Circuit reiterated that "temporal proximity in the absence of other evidence of causation is not sufficient to raise an inference of a causal link." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). *Singfield*, a 2004 opinion, suggests that temporal proximity alone *is* sufficient. *See Singfield*, 389 F.3d at 563 (citing cases in which temporal proximity served to prove causation and finding that temporal proximity was sufficient in the case at bar to infer causation). Although the two cases seem to be directly contradictory, the *Nguyen*

court did note that "evidence that the defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation," *Nguyen*, 229 F.3d at 563, and observed that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference." *Id.* at 567. Seemingly *Singfield* presented the factual circumstances lacking in *Nguyen*.

In any event, even if the more rigorous *Nguyen* standard, under which the plaintiff must establish more than mere temporal proximity, is controlling, this court finds that plaintiff has satisfied the causation prong of her prima facie case. Here, there is additional evidence that raises an inference of causation. As plaintiff points out, she had no history of disciplinary infractions or other reasons which would warrant her termination. More troubling is the fact that her counterpart, Ms. Roy, remains at the company—"evidence that the defendant treated the plaintiff differently from similarly situated employees." *Nguyen*, 229 F.3d at 563. Finally, though Chase's planned restructuring was well-documented, nowhere is Ms. Northern's termination mentioned. These facts, together with the very short time period within which Ms. Northern were terminated, certainly suffice to raise an inference of causation under both *Nguyen* and *Singfield*.

Having established a prima facie case, the burden shifts to the defendant to proffer a legitimate, non-discriminatory reason for the termination. Chase contends that Ms. Northern's termination was part of planned restructuring and points to documentation, preceding the alleged protected activity, between members of management demonstrating the creation of the Employee Relations Manager and plaintiff's lack of qualifications for the position. Thus Chase has satisfied its burden of producing " 'admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.' "

*Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004) (quoting *Texas Dep't of Cmty. Affairs v. Burdein*, 450 U.S. 248, 257 (1981)).

Finally, the burden shifts back to plaintiff to demonstrate that the defendant's proffered legitimate, non-discriminatory reason is mere pretext to cover up the true, prohibited reason for the termination. The court finds that plaintiff has satisfied this burden. First, although Chase has well documented the planned creation of the position of Employee Relations Manager, for which Chase contends that Ms. Northern was not qualified, plaintiff notes that nowhere in this documentation is Ms. Northern's *termination* mentioned. Rather, management simply notes that she was not qualified for this new position. Indeed, Ms. Northern's counterpart, Ms. Roy, remains with Chase, helping to cover the duties once performed by Ms. Northern. Though Chase maintains that Messrs. Brooks and Brown discussed Ms. Northern's termination at the conference on February 22-23, this fact is very much in dispute, and the court is bound to draw all inferences in favor of the non-moving party. Because plaintiff appears to have established that the proffered reason "did not actually motivate the challenged conduct ... or is insufficient to explain the challenged conduct," *Singfield*, 389 F.3d at 564, she has met her burden of demonstrating pretext.

In sum, plaintiff has established a prima facie case under Title VII and the THRA. Although defendant has met its burden of demonstrating a legitimate, non-discriminatory reason for the adverse employment action, plaintiff likewise has met her burden of rebuttal in demonstrating pretext. There remain genuine issues of material facts, therefore, for the jury to resolve at trial. Defendant's motion for summary judgment with regard to plaintiff's claims under Title VII and the THRA is **DENIED.**

.           **B. The TPPA and Common Law Retaliatory Discharge**

13

Plaintiff also alleges violations of the Tennessee Public Protection Act ("TPPA"), Tenn. Code Ann. § 50-1-304 (2007), and the Tennessee common law of retaliatory discharge. Although the elements of these claims are similar, they are not identical. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 537-38 (Tenn. 2002) ("[C]lose examination of the statute reveals key distinctions from the common law tort .... [S]ection 50-1-104 increases the burden of proof .... Accordingly ... section 50-1-304 is cumulative to, and does not preempt, the common law tort remedy for retaliatory discharge claims ...."). The court will address each in turn.

### 1. The TPPA

The TPPA provides, "No employee shall be discharged or terminated for refusing to participate in, or for refusing to remain silent about, illegal activities." Tenn. Code Ann. § 50-1-304(a) (2007). " 'Illegal activities' means activities that are in violation of the criminal or civil code of [Tennessee] or the United States or any regulation intended to protect the public health, safety, or welfare." *Id.* § 50-1-304(c). To state a claim under the TPPA, plaintiff must establish 1) her status as an employee of Chase, 2) her refusal to participate in, or remain silent about, "illegal activities" as defined by the TPPA, 3) the termination of her employment, and 4) an *exclusive* causal relationship between her refusal to participate or remain silent and her termination. *E.g.*, *Franklin v. Swift*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006) (citing Tenn. Code. Ann. § 50-1-304).

It is undisputed that plaintiff was an employee of Chase and that her employment was terminated. The parties dispute, however, the second and fourth elements of the claim. This court, however, must draw all inferences and construe the facts in the light most favorable to the nonmoving party, the plaintiff. In so doing, it is clear that there exist genuine issues of material fact to be resolved at trial.

With regard to the second element, plaintiff's refusal to participate in or remain silent about "illegal activities," plaintiff contends that her participation in an investigation and her report of personal knowledge to Mr. Brooks satisfies this element. Certainly, the alleged activity was, if true, illegal under Title VII and Tennessee anti-dumping laws. Defendant, however, argues that plaintiff was merely performing her job and was not encouraged to participate in, let alone remain silent about, such illegal activities. Plaintiff's allegations of her personal reporting and subsequent investigations, however, are sufficient evidence for a prima facie case with regard to the second element of the TPPA.

With regard to the fourth element of causation, the Tennessee Supreme Court has provided the following standards for the burden of proof at the summary judgment stage:

> Where, as here, the claim is one alleging retaliatory discharge and the essential factor to be determined is the employer's motivation, direct evidence of that motivation is rarely within the plaintiff's possession. Consequently, the reviewing court must make a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational trier of fact to infer a [retaliatory] motive. It is not the province of the summary judgment court itself to decide what inferences should be drawn. The evidence of causation must be viewed in a light most favorable to the nonmoving party and all reasonable inferences must be made in that party's favor. The burden of proof rests upon the plaintiff to prove a causal relationship between the plaintiff's whistleblowing activity and the termination of employment. If the plaintiff is able to demonstrate this causal link, the employer then bears the burden of showing a legitimate, non-pretextual reason for the employee's discharge. Summary judgment should be granted only when the facts and inferences drawn from those facts permit a reasonable person to reach only one conclusion.

*Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002) (internal quotations and citations omitted), *quoted in Conley v. Yellow Freight Sys., Inc.*, No. 1:06-cv-164, 2007 U.S. Dist. LEXIS 75114 (E.D. Tenn. Oct. 9, 2007). Although the plaintiff must establish *at trial* that there was an exclusive causal relationship between her silence or refusal to participate and her termination, under

the *Guy* standard for summary judgment, plaintiff has demonstrated a sufficient causal link. Although the defendant has advanced a seemingly legitimate reason for the employee's discharge, a genuine issue of fact remains whether this is mere pretext. To put it simply, the facts and inferences drawn therefrom do *not* permit a reasonable person to reach *only one* conclusion. As previously noted, though defendant may not have found plaintiff qualified for the position of Employee Relations Manager, it is unclear that as part of this planned restructuring, defendant intended to end plaintiff's employment with Chase entirely. Because there exist genuine issues of material fact, the defendant's motion for summary judgment must be **DENIED** with regard to plaintiff's TPPA claim.

### 2. Common Law Retaliatory Discharge

Similarly, to state a claim under the common law, plaintiff must demonstrate

> 1) that an employment-at-will relationship existed, 2) that [s]he was discharged, 3) that the reason for [her] discharge was that [s]he attempted to exercise a statutory or constitutional right, or for any reason which violates a clear public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision; and 4) that a *substantial* factor in the employer's decision to discharge him was the exercise of protected rights or his compliance with clear public policy.

*Franklin v. Swift*, 210 S.W.3d 521, 528 (Tenn. Ct. App. 2006) (emphasis added) (citations omitted). Thus the elements for a claim under the common law of retaliatory discharge are very similar to those under the TPPA; however, there is a lesser burden of proof with regard to causation.

Plaintiff has established a prima facie case under the Tennessee common law of retaliatory discharge. Here, plaintiff was employed at-will and was terminated. Plaintiff also alleges that she was discharged for exercising rights protected under three statutes: Title VII, the THRA, and the TPPA. Furthermore, plaintiff maintains that her reporting and refusal to remain silent with regard to the illegal dumping allegations advanced the well-being and safety of the public. There simply

16

remains an issue as to whether this refusal to remain silent was a "substantial" cause for her termination. As discussed above, the facts do not dictate a judgment in favor of defendant; rather, there remains a genuine issue of material fact for the jury to resolve as to causation. Accordingly, the defendant's motion for summary judgment with regard to plaintiff's common law retaliatory discharge claim is **DENIED.**

### C. Outrageous Conduct

Plaintiff also seeks to recover for the tort of outrageous conduct, otherwise known as intentional infliction of emotional distress. *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997) ("The tort of intentional infliction of emotional distress and outrageous conduct are not two separate torts ,but are simply different names for the same cause of action."). Tennessee first recognized the tort in 1966. *Id.* at 622. The Tennessee Supreme Court has summarized the elements of an outrageous conduct claim as follows:

> [U]nder Tennessee law, there are three essential elements to [an outrageous conduct] cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury.

*Id.*

With regard to whether actions are "outrageous," Tennessee adheres to the following standard:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice" or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

17

*Id.* at 623 (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966) *(abrogated on other grounds by Camper v. Minor*, 915 S.W.2d 437, 444-46 (Tenn. 1996)).

Plaintiff clearly does not meet this "extremely high standard" of outrageousness. *E.g.*, *Jenkins v. Nashville Pub. Radio*, No. 3:02cv0179, 2005 U.S. Dist. LEXIS 33280, at *12 (M.D. Tenn. Dec. 9, 2005); *McNeail-Tunstall v. Marsh USA*, 307 F. Supp. 2d 955, 976 (W.D. Tenn. 2004). As in similar cases brought under Title VII and the THRA, "the only evidence [plaintiff] presents regarding outrageousness is the same as her allegations that [defendant] violated federal anti-discrimination laws." *McNeail-Tunstall*, 307 F. Supp. 2d at 976. Yet "without additional evidence showing conduct so outrageous as not to be tolerated in civilized society, [this] is simply insufficient to prove intentional infliction of emotional distress." *Id.*; *accord Jenkins*, 2005 U.S. Dist. LEXIS 33280, at *13. As the Middle District of Tennessee has noted, even if the evidence alleged is

> sufficient to raise a material issue of fact whether Defendant violated Title VII and/or the THRA ... the mere fact that Defendant may be subject to liability for its conduct in the context of Title VII and the THRA is, without more, insufficient to state a claim under the state common law theory of intentional infliction of emotional distress.

*Minor v. Ford Motor Co.*, No. 3-94-1102, 1996 U.S. Dist. LEXIS 22815, at *20 (M.D. Tenn. Nov. 7, 1996). In short, bare allegations of violations of Title VII and the THRA are insufficiently outrageous to state a claim of outrageous conduct under Tennessee law.

Plaintiff's outrageous conduct claim is further flawed in that plaintiff has failed to allege any "serious mental injury" resulting from defendant's actions. Although plaintiff alleges she was embarrassed, cried for about a week, didn't want to do anything for several days, and consulted her minister, mere embarrassment and general moroseness are insufficient to constitute

18

"serious mental injury." *See, e.g.*, *Woodard v. Morgan Tire & Auto, Inc.*, No. 3:05-0681, 2006 U.S. Dist. LEXIS 71479, at *22-23 (M.D. Tenn. Oct. 2, 2006) (plaintiff who suffered from clinical depression, had trouble sleeping, and became less outgoing and trusting did not suffer "serious mental injury"). Tennessee courts routinely quote the standard put forth by the Restatement (Second) of Torts in determining whether a plaintiff has met the "serious mental injury" standard. *E.g.*, *Miller v. Willbanks*, 8 S.W.3d 607, 616 (Tenn. 2004); *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004). The Restatement (Second) of Torts provides,

> Emotional distress ... includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *It is only where it is extreme that the liability arises....* [S]ome degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

Restatement (Second) of Torts § 46 cmt. j (emphasis added). Plaintiff thus has far to go to plead sufficiently serious mental injury; even accepting plaintiff's facts as true, she has clearly failed to meet this burden.

In sum, even construing the facts in the light most favorable to the plaintiff, defendant's alleged conduct is not sufficiently "outrageous" and plaintiff did not suffer "serious mental injury." Defendant's motion for summary judgment will be **GRANTED** with regard to plaintiff's claim for outrageous conduct.

### IV. CONCLUSION

For the foregoing reasons, defendant Chase Scientific, Inc.'s motion for summary judgment [Doc. 20] is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to plaintiff's claim of outrageous conduct and **DENIED** as to plaintiff's claims of

19

retaliatory discharge under Title VII, the THRA, the TPPA, and Tennessee law. The parties will prepare the case for trial.

**IT IS SO ORDERED.**

                                                **ENTER:**

                                                s/Thomas W. Phillips
                                                UNITED STATES DISTRICT JUDGE